IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERRELL S. PATTERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 4:02CV00732 DJS/AGF |
| v. | ) | |
| | ) | |
| DAVE DORMIRE, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pro se petition of Missouri state prisoner Terrell S. Patterson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, this Court recommends that federal habeas relief be denied.

Petitioner was charged with first-degree assault (Count I) and armed criminal action (Count II) arising out of the August 5, 1998 shooting of Arthur Duncan; and first-degree murder (Count III) and armed criminal action (Count IV) arising out of the shooting death that same day of Petitioner's wife, Joyce Patterson. A jury found Petitioner guilty of all four counts, and the trial court sentenced him on June 9, 1999, to life imprisonment on Counts I, II, and IV, and life imprisonment without the possibility of parole on Count III, all to be served consecutively. Petitioner's convictions and sentences were affirmed on direct appeal on May 30, 2000. His motion for state post-conviction relief was denied, and this denial was affirmed on appeal on February 22, 2002.

In his petition for federal habeas relief, Petitioner claims that his constitutional rights were violated in the following ways:

(1) The trial court erroneously asked the jury to deliberate again after the jury returned a verdict form on Count III finding Petitioner guilty of second-degree murder;

(2) Appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial court erred in refusing to instruct the jury on the lesser included offenses of second-degree assault and involuntary manslaughter as to Counts I and III, respectively; and

(3) Appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial court erred in overruling Petitioner's objection to the prosecutor's definition of the term "deliberation" during closing argument or, in the alternative, trial counsel was ineffective in failing to adequately object to this aspect of the prosecutor's closing argument.[1]

The State argues that this Court is procedurally barred from considering the merits of claim (2) above, as well as the claim regarding trial counsel in claim (3) because Petitioner did not properly present these claims to the Missouri appellate court, and that habeas relief should be denied on Petitioner's other two claims because the state courts' adjudication of them was not unreasonable.

## BACKGROUND

### Trial

Petitioner does not challenge the sufficiency of the evidence to support his convictions. The evidence adduced at trial established that in mid-July 1998, Petitioner moved out of his house after an argument with his wife over his suspicions that she was having an affair with Mr. Duncan. Petitioner moved into a nearby motel, and Petitioner's

---

[1] The petition lists four claims for relief, but claims 3 and 4 are essentially identical.

wife filed for divorce. On August 4, 1998, at about 10:00 p.m., Petitioner called the house and spoke with his 19-year-old daughter. His daughter testified that Petitioner was hysterical and said that he "was fixing to do it," which she took to mean that he was going to commit suicide. Petitioner called again at about midnight, 2:00 a.m., and 5:00 a.m., and spoke to his daughter's fiancé, telling him that he wanted to try to get back together with his wife.

At approximately 6:45 a.m. that morning, Petitioner knocked on the door of Mr. Duncan's house, which was approximately 20 miles away from where Petitioner was staying. Mr. Duncan came outside, and Petitioner asked him if he was having an affair with his wife. Mr. Duncan replied that he had not seen Petitioner's wife in about two months. Petitioner said that Mr. Duncan was lying, and that he was going to kill Mr. Duncan and then kill his own wife. Mr. Duncan stated, "You don't want to do this," to which Petitioner responded, "The hell I don't," and shot Mr. Duncan in the stomach with a handgun. Petitioner then drove back to his house and shot and killed his wife.

On the morning of August 6, police officers found Petitioner at a motel and arrested him. He told them that he had shot both victims and wanted to know if they were dead. At the police station, Petitioner gave an oral and videotaped statement which was played for the jury. Resp. Ex. B-I at 143-191, B-II at 192-291. In the statement, Petitioner told the officers that he made up his mind to kill his wife after he made the 5:00 a.m. phone call to the house. He stated that he tried to talk himself out of it, but then drove to Mr. Duncan's house and shot him to kill him. He then drove to his own house, knocked on the door, and when his wife opened the door he shot her without saying a

3

word.  She fell, and Petitioner shot her two more times.  Resp. Ex. C.  Petitioner did not testify and presented no evidence on his behalf.

**<u>Closing Argument and Verdicts</u>**

During closing argument, the prosecutor stated to the jury:

> Deliberation.  A word you're going to hear a lot about in the next few minutes of this trial.  In Instruction No. 11, it says – and that is the murder, first degree instruction – that he committed this crime – if you find he committed this crime after deliberation, which mean cool reflection upon the matter for any length of time no matter how brief.
>
> Deliberation.  It's a big word.  Something we do every day.  Something you're going to do at the end of this trial.  When you go back and deliberate.  That's what deliberation is.  Thinking.  Thinking about what you do.
>
> A small example.  You walk into a restaurant.  You're handed a menu.  It's not a very long menu.  You look at it and in a few minutes –
>
> \*   \*   \*
>
> This example is not a definition outside the instruction, ladies and gentlemen.  You walk into a restaurant, you're handed a menu, you look at it, you think about what you're going to order, and you order it.
>
> \*   \*   \*
>
> You order.  You deliberate.  You act.  Common sense thing.  If it's a long menu, you might sit there for a while.  The waitress might come back and you might, "we'll think about it."  May take you 15 minutes to deliberate and then to act.  A period of time passes.  One short, one long.
>
> And another example, you might decide at home what you want and go into the restaurant and not even ask for a menu.  You've deliberated beforehand.  You thought about it and you act later.
>
> Now the definition is given to you in the instructions, which means "cool reflection upon the matter for any length of time, no matter how brief."  Common sense application.  It can occur at the time, it can occur

somewhat before, it can occur a long time before. It's still deliberation.
When you decide what you're going to do.

Resp. Ex. B-II at 308-10. Defense counsel interspersed objections on the ground that this argument constituted an unauthorized definition of "deliberation," or a definition "outside the instructions." The prosecutor stated he was not attempting to "give a definition outside the instructions," and the objections were overruled. Id. During closing argument on Petitioner's behalf, defense counsel urged the jury to find Petitioner guilty of second-degree murder, which does not require a finding of deliberation, not first-degree murder, which does require such a finding. Counsel argued that at the time of the shootings, Petitioner was in a state of emotional turmoil and could not deliberate. Id. at 315-20.

With respect to Count III, the jury was instructed on first-degree murder (Instruction No. 11), as well as on the lesser included offense of second-degree murder (Instruction No. 13). In Instruction No. 11, the trial court defined "deliberation" as "cool reflection upon the matter for any length of time no matter how brief," which is how the term is defined in Mo. Rev. Stat. § 565.020(3). Instruction No. 14 directed the jury to find Petitioner guilty of armed criminal action in connection with the murder (Count IV) if they believed that Petitioner committed first-degree murder and did so with the use of a deadly weapon. Instruction No. 15 directed the jury to find Petitioner guilty of armed criminal action in connection with the murder if they believed that Petitioner committed second-degree murder and did so with the use of a deadly weapon. Resp. Ex. A at 60-64.

5

Each of the four above-noted instructions (Nos. 11, 13, 14, and 15) told the jury that if they found Petitioner guilty of the relevant crime, they were to assess punishment, with the instruction noting the possible punishments. Resp. Ex. A at 60, 62, 63, and 64. The jury was given verdict forms covering all the possible verdicts on the four counts with which Petitioner was charged. Each form referenced the relevant instruction(s), and each form asked the jury to assess the punishment for the crime covered by that form if they found him guilty of that crime. The trial court rejected Petitioner's proposed instructions on second-degree assault and involuntary manslaughter with respect to Counts I and III, respectively. Id. at 67, 69.

After deliberating for approximately one hour and twenty minutes, the jury returned four verdict forms, one as to each count. The court and counsel for both sides examined the forms in chambers. The court first noted that the verdict forms as to Counts I and II finding Petitioner guilty of first-degree assault and armed criminal action in connection with the first-degree assault were acceptable and consistent.[2] The court then looked at the verdict form as to Count III and stated: "We have a verdict on Count III, finding the Defendant guilty of second degree murder and assessing punishment at life imprisonment and it's signed. It seems to be a permissible verdict. Does everybody agree?" Both defense counsel and the prosecutor responded, "Yes, Your Honor." Resp. Ex. B-II at 326.

---

[2] On the verdict form for first-degree assault, the jury wrote life without parole or probation as the punishment they assessed. This was not a legal sentence for first-degree assault, and the court and counsel for both sides agreed that the jury's sentence assessment be treated as surplusage.

The court then turned to the verdict form as to Count IV -- armed criminal action in connection with the murder. The jury had written on the form which referenced Instruction No. 11 (the instruction on first-degree murder) that it assessed punishment of life imprisonment. The form was not signed. Noting that this verdict form should have been used only if the jury found Petitioner guilty of first-degree murder, the court stated: "[E]ven if [the fourth verdict form] were signed, it would not be a permissible verdict. Therefore, the jury needs to be instructed by some means to reconsult its instructions and deliver an acceptable verdict upon Count IV." Id. at 327.

Defense counsel responded: "Judge, I'd just like to ask that Counts I, II, III, that they've already signed properly, that those being accepted by the Court and they just be referenced as to Count IV as to re-looking at that." The prosecutor replied that the jury "did not return a complete verdict." Upon returning to the courtroom, the court told the jury: "Ladies and gentlemen, as to Count IV, your verdict is not in a complete and acceptable form. Please return to your room, endeavor to reach verdicts upon Count IV, and read the instructions upon the verdict forms." Id. at 327-28.

The jury thereupon returned to the jury room. Six minutes later, the jury reentered the courtroom. The only record of what occurred is a notation in the transcript that the court and counsel held an off-the-record discussion, at the conclusion of which the court returned the packet of instructions and verdict forms to the jury and stated as follows: "Ladies and Gentlemen, please return to your room again and consider Count IV and carefully read the instructions contained on the verdict forms upon the forms related to Count IV." Id. at 327-28.

Approximately 15 minutes later, the bailiff brought the judge the packet back from the jury. Upon examination, the court told counsel that the jury had erased the signature from the verdict form on Count III finding Petitioner guilty of second-degree murder and had signed the Count III verdict form finding Petitioner guilty of first-degree murder. Id. at 329. On Count IV, the jury signed the verdict form finding Petitioner guilty of armed criminal action as submitted in Instruction No. 14. Defense counsel argued that the original verdict form on Count III should be accepted, as that verdict was in proper form. Counsel argued that to now accept a verdict on Count III of first-degree murder violated Petitioner's double jeopardy rights. The court rejected this argument and denied Petitioner's alternative motion for a new trial. The jury was called in and polled as to each of the four verdict forms. Every juror confirmed the verdicts, and the court accepted them. Id. at 330-37.

**Direct Appeal**

The only argument petitioner raised on direct appeal was that the trial court erred in how it handled the jury verdicts. Specifically, Petitioner argued that the trial court erred in (1) refusing to accept the jury's second-degree murder verdict, (2) requiring the jury to further deliberate on all counts after it had acquitted Petitioner of the greater offense of first-degree murder when it found him guilty of the lesser offense, (3) accepting a subsequent first-degree murder verdict, (4) overruling Petitioner's motion for a new trial, and (5) failing to advise the jury in writing what verdicts were inconsistent and not submitting a new set of verdict forms for those verdicts, pursuant to Missouri

Approved Instructions (Criminal 3d) 312.06.[3] Petitioner argued that these acts and omissions possibly coerced the verdict of guilty of first-degree murder and violated Petitioner's due process and double jeopardy rights. Resp. Ex. D.

The Missouri Court of Appeals affirmed Petitioner's convictions and sentences. The court noted that there was a "patent inconsistency" between the initial verdict forms presented by the jury on Counts III and IV. In rejecting Petitioner's first four arguments noted above, the court relied upon the decision by the Missouri Supreme Court in State v. Peters, 855 S.W.2d 345 (Mo. 1993) (en banc). In that case, the jury initially returned verdict forms that found the defendant guilty of armed criminal action, but acquitted him of the underlying assault charge on which the armed criminal action count was based. The trial court refused to accept the verdict, told the jury it had not followed the court's instructions, and ordered it to retire and read the instructions. The jury later returned with guilty verdicts on both counts. The Missouri Supreme Court held that the trial court had acted properly in sending the matter back to the jury for further consideration and rejected the defendant's double jeopardy argument, holding as follows:

---

[3] MAI-CR3d 312.06, to be used when a jury returns inconsistent verdicts, reads as follows: "The Court cannot accept your verdicts as written. The verdicts are inconsistent as to Count(s) ___ [*Specify counts that are inconsistent.*]. You should examine your verdicts in light of all of the instructions. Do not destroy any of the verdict forms."

In State v. Peters, 855 S.W.2d 345, 349 (Mo. 1993) (en banc), the Missouri Supreme Court, recognizing the potential for the jury being "unusually susceptible to reading into the judge's comments an inference that the judge, in rejecting their verdict, is looking for a particular result," recommended that a court's instruction resubmitting the matter to the jury should be in writing.

> An attempt by a jury to return a verdict that is not accepted by the trial judge is not a verdict. A verdict is not binding until the court accepts it and the jury is discharged. A trial court's refusal to accept an inconsistent verdict is not a situation which places a defendant in double jeopardy.

Peters, 855 S.W.2d at 350 (citations omitted).

The appellate court in the present case reviewed Petitioner's fifth argument for reversal under the plain error standard because the argument was not included in Petitioner's motion for a new trial. Under this standard, relief is only appropriate in cases of "manifest injustice" or a "miscarriage of justice." The court concluded that any complaint by Petitioner that the eventual verdict on Count III – guilty of first-degree murder – constituted manifest injustice or a miscarriage of justice was refuted by the jurors' responses to the trial court's poll. Resp. Ex. F; State v. Patterson, 18 S.W.3d 474 (Mo. Ct. App. 2000).

**State Post-conviction Proceedings**

Petitioner sought post-conviction relief under Missouri Supreme Court Rule 29.15 claiming, among other things, that appellate counsel was ineffective in failing to argue on appeal that the trial court erred in overruling Petitioner's objection to the prosecutor's definition of the term "deliberation" during closing argument. This was the only claim raised by Petitioner in his appeal from the denial of post-conviction relief. Resp. Ex. N. On this claim, Petitioner's appellate counsel submitted an affidavit to the motion court stating that before filing the appeal he considered all matters in the record, and that there was nothing in addition to the issues he raised that he could have raised in good faith, and that had he raised other arguments they would have detracted from the points he did raise.

Specifically as to the "deliberation" argument, counsel attested that he believed that rather than giving an unauthorized definition of deliberation, the prosecutor was merely giving an example of it. Resp. Ex. K.

The motion court held as follows on this claim: "The evidence of movant's guilt was overwhelming and the criticized argument did not have a decisive effect on the jury verdicts. Appellate counsel concluded that this issue was frivolous and declined to assert it. It could not have been successfully asserted, and movant was not prejudiced by its omission." Resp. Ex. I at 41-42.

The Missouri Court of Appeals affirmed the denial of post-conviction relief, holding that the motion court did not commit error in concluding that appellate counsel could not have obtained a reversal based on the prosecutor's alleged improper argument. Resp. Ex. P at 6. The appellate court believed that the prosecutor never misdefined "deliberation," and that his examples of deliberation did not conflict with the definition in Instruction No. 11. Further, the appellate court concluded that the prosecutor's argument did not mislead the jury because he commenced and ended the challenged comments with references to the proper definition of deliberation as found in Instruction No. 11. Id. at 7.

## DISCUSSION

**Procedural Default**

The State correctly argues that this Court is procedurally barred from considering the merits of Petitioner's claims that (1) appellate counsel was ineffective in failing to argue on direct appeal that the trial court erred in refusing to instruct the jury on the lesser included offenses of second-degree assault and involuntary manslaughter as to Counts I

and III, respectively; and (2) trial counsel was ineffective for failing adequately to object to the prosecutor's definition of the term deliberation. Under the doctrine of procedural bar, a federal habeas court will not review a claim that a habeas petitioner defaulted in state court by not properly presenting the claim, meeting the state's procedural requirements for doing so. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Coleman v. Thompson, 501 U.S. 722, 732 (1991)). An exception to this rule barring procedurally-defaulted claims exists where a habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show actual innocence." Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002) (citation omitted).

Here, although petitioner did raise the claims in question in his state post-conviction motion, he did not raise them on appeal from the denial of that motion. This constitutes a procedural default under Missouri law. See Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997) (a claim presented by a Missouri inmate in a motion for post-conviction relief but not advanced on appeal from the denial of the motion is procedurally defaulted); Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996) (same).

In his traverse, Petitioner asserts that it was post-conviction appellate counsel's decision not to raise this claim, and thus the Court should excuse the procedural default. In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation. Edwards, 529 U.S. at 451-52. Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom. Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004), cert. denied, 125 S.Ct. 902 (2005). Because

12

there is no federal constitutional right to the effective assistance of post-conviction counsel, the ineffective assistance of appellate post-conviction counsel cannot constitute cause to excuse a procedural default. Clay v. Bowersox, 367 F.3d 993, 1005 (8th Cir. 2004), pet. for cert. filed, Jan. 3, 2005, No. 04-8018. The Court is accordingly barred from considering these claims on the merits and will proceed to consider the merits of Petitioner's remaining two claims, which are properly before the Court.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "AEDPA effected a move toward greater deference in the § 2254 courts' review of state-court decisions." Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 1397 (2005).

The "contrary to" clause is satisfied if a state court has arrived "'at a conclusion opposite to that reached by [the Supreme Court] on a question of law'" or "'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent'" but arrives at the opposite result. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established

federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; Linehan v. Milczark, 315 F.3d 920, 924 (8th Cir. 2003).

A case cannot be overturned merely because it incorrectly applies federal law; the application must also be "unreasonable." Williams, 529 U.S. at 411; Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable").

> The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to an even more deferential review. Relief may be granted if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." Id. § 2254(e)(1).

Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001).

**Double Jeopardy and Due Process Claims**

Petitioner argues, as he did on direct appeal, that the trial court violated his due process and double jeopardy rights by refusing to accept the jury's initial second-degree murder verdict. Petitioner raises the same five aspects of this claim that he presented to the Missouri Court of Appeals. The question before this Court is not whether the trial judge followed state procedural rules in its handling of the verdict forms. Rather, the question is whether the state court's determination that the trial court's actions were consistent with the double jeopardy and due process clauses of the federal constitution "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that

14

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Under the Double Jeopardy Clause, a State may not put a defendant in jeopardy twice for the same offense. Benton v. Maryland, 395 U.S. 784, 795 (1969). The constitutional protection against double jeopardy prohibits prosecution for an offense following an acquittal. Arizona v. Washington, 434 U.S. 497, 503 (1978). The underlying principle of the Double Jeopardy Clause

> is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Benton, 395 U.S. 784, 795 (citation omitted).

Here, it seems clear that there was no final verdict finding Petitioner guilty of second-degree murder. Rather, the trial court, noting the inconsistency between the initial verdicts on Counts III and IV did not accept the jury's verdict forms. The initial verdict form finding Petitioner guilty of second-degree murder was never announced in court. In Lashley v. Armontrout, 957 F.2d 1495 (8th Cir. 1992), the Eighth Circuit rejected a § 2254 habeas petitioner's double jeopardy and due process claims arising out of an improper verdict form later corrected by the jury. In that case, the petitioner had been found guilty of capital murder. At the punishment phase of trial, the jury was asked to determine whether the State proved, beyond a reasonable doubt, that the petitioner committed the murder for pecuniary gain. The jury initially returned a verdict form imposing the death penalty which stated "there was no evidence to disprove he entered the house for the reason of obtaining money."

15

The trial court told the jury that the verdict was not in the proper form and asked them to retire and review the court's instructions. Defense counsel, although agreeing that the verdict was improper, objected to the court's returning the jury for further deliberations and moved for a mistrial, which was overruled. The jury thereafter returned a verdict form finding the petitioner guilty of the aggravating factor and again imposing the death penalty. The trial court polled the jurors to ensure that the verdict was unanimous.

For habeas relief, the petitioner in Lashley argued that the trial court's refusal to accept the jury's initial verdict placed him in double jeopardy and interfered with his right to a jury trial. The Eighth Circuit held that these claims were without merit, explaining as follows:

> A trial court may ask a jury to correct its verdict without violating the [double jeopardy and trial by jury] rights [Petitioner] raises. We agree with the Missouri Supreme Court that the trial court "could not have handled the situation in a more neutral manner." Under Missouri law, a "jury's verdict is not binding until it is accepted by the court and the jury discharged." The trial court simply complied with Missouri law by requiring the jury to deliberate further and to return a verdict in proper form, and [Petitioner's] constitutional rights were not impaired.

Id. at 1498 (citations omitted), rev'd on other grounds, 507 U.S. 272 (1993); cf. Brown v. Gunter, 562 F.2d 122, 125 (1st Cir. 1977) (state rule which allowed a discharged but still isolated jury to correct its verdict of not guilty to guilty after the original verdict was delivered in open court and recorded did not violate defendant's double jeopardy or trial by jury rights); United States v. Mears, 614 F.2d 1175, 1179 (8th Cir. 1980) ("A jury may remedy an announced verdict which was incorrectly signed due to inadvertent error." Immediately after the verdict was read in open court declaring the defendant not guilty, the jury foreman informed court that the verdict form was incorrectly signed; jury returned for

16

further deliberations, emerging four minutes later with a verdict form finding the defendant guilty; any ambiguity in the verdict was cured by judge polling each juror).

Here, upon review of the record, the Court cannot say that the state courts' determination that the trial court properly handled the situation in the present case was unreasonable. The Court finds no support for Petitioner's contention that the trial court coerced or lead the jury to infer that the court wanted a verdict of guilty of first-degree murder. Pursuant to the trial court's directives, the jury easily could have changed its verdict on the armed criminal action charge connected to the murder to be consistent with a verdict finding Petitioner guilty of second-degree murder. Indeed, if anything, the trial court's directives might have lead the jury to infer that the court intended for them to change the verdict form as to Count IV to be consistent with their initial verdict on Count III. Furthermore, it is clear from the polling of the jury that the jury unanimously found Petitioner guilty of first-degree murder. As noted earlier, Petitioner does not challenge the sufficiency of the evidence to support this verdict, nor would such a claim be successful.

**Ineffective Assistance of Appellate Counsel**

Petitioner's other habeas claim that is properly before this Court is that appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial court erred in overruling Petitioner's objection to the prosecutor's definition of the term "deliberation" during closing argument. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial and direct appeal counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). When the claim involves appellate counsel, to prove ineffective assistance a habeas petitioner must show that counsel's performance fell below an

17

objective standard of reasonableness in failing to raise a claim on appeal, and that there is a reasonable probability that the result of the appeal would have been different had the claim been raised. Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002); Carter v. Bowersox, 265 F.3d 705, 713-14 (8th Cir. 2001).

Upon review of the prosecutor's statements during closing argument with regard to the meaning of "deliberation," the Court concludes that the state courts' decision on the matter was not legally or factually unreasonable. As the Missouri appellate court noted in affirming the denial of post-conviction relief, the prosecutor's discussion of deliberation was framed with the correct statutory definition of the term. Furthermore, the jury instructions correctly defined the term. It was not unreasonable for the state courts to conclude that defense counsel made a strategic choice in not raising this claim, and that the choice was in no way lacking. See Evans, 371 F.3d at 445 (where direct-appeal counsel's omission of a claim was a strategic decision made after considering the relative strength of all of the issues, claim of ineffective assistance fails); cf. Carter, 265 F.3d at 716 (appellate counsel can limit the appeal to those issues which he determines to have the highest likelihood of success; presumption that failure to raise a claim was a strategic choice was defeated by counsel's affidavit that he failed to raise the meritorious claim because he overlooked it).

## **CONCLUSION**

Petitioner is not entitled to federal habeas relief on any of the claims asserted in his petition. The Court does not believe that "reasonable jurists" might find the Court's assessment of petitioner's claims for habeas relief "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v.

18

<u>Cockrell</u>, 123 S.Ct. 1029, 1040 (2003) (standard) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Terrell S. Patterson for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should be denied on all claims.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of June, 2005.